UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-cr-20167-KMW

UNITED STATES OF AMERICA,
      Plaintiff,

vs.

WENDER CORTES CANTILLO,
      Defendant.
_____/

### DEFENDANT, WENDER CORTES CANTILLO'S, SENTENCING MEMORANDUM and MOTION FOR DOWNWARD DEPARTURE and VARIANCE

Wender Cortes Cantillo, by and through his undersigned counsel, hereby files this Sentencing Memorandum, Motion for Downward Departure and Motion for a Variance under 18 U.S.C. § 3553(a).

### SUMMARY OF THE SENTENCING ARGUMENT

This Court should depart and vary downward for this hardworking father and upstanding member of his community who took responsibility for his very minor role in this offense.

## I.  BACKGROUND and PERSONAL HISTORY OF WENDER CORTES CANTILLO

Wender is a 25-year old family man who lives in Puntarenas, Costa Rica. When Wender was just a baby, his mother abandoned him, his older sister and his father, leaving him to be raised by his paternal grandmother. Unfortunately, Wender's father had already had a very serious motorcycle accident that left him paralyzed, wheelchair bound and with numerous medical issues. So, when he was still a child in the 6th grade, Wender had to leave school, go to work, help to care of his father and assumed the role as the head male in the house.

1

As an adult, Wender lives in a tin roofed house where he supports and cares for his disabled father and aging grandmother. This house also serves as Wender's mechanic shop where he is in the business of fixing motorcycles.

Wender's family home in Puntarenas, Costa Rica

Wender's motorcycle mechanic garage and business







At the time of his arrest, Wender was the main caretaker of his disabled father, who not only is in a wheelchair but more recently underwent surgery for colon cancer leaving him with a colostomy bag. Wender has to help him with all his daily activities such as dressing, bathing, feeding and physically moving him in and out of bed and his wheelchair. In addition, Wender financially supported his father and brought him to all his medical appointments.



Wender's father in bed and with his wheelchair Puntarenas, Costa Rica



In addition, Wender is also a hardworking and dedicated father to his own children. He has two baby daughters with his current domestic partner, Jessica, and another daughter from a prior relationship.



Wender's and his three daughters



As a result of the dire family situation, debts and a lien that was accruing on Wender's family home, he made the bad decision to join this conspiracy in order to earn enough money to bring his family out of debt and take care of them.

Wender has never been to the United States. He was brought here after being arrested from a boat in the Pacific Ocean. He is now in a jail in a foreign land, hundreds of miles away from his family who is now destitute without his income and suffering hardship without his

assistance in the home with his disabled father. This is a unique mental punishment different from the situation of most federal inmates.

It is clear that Wender is a supportive and loving son, brother and father who is extremely close with his family. Most importantly, he has the responsibility for caring for his disabled father who is wheelchair bound. His grandmother explains, "He is a young man very committed to his home, the motorcycle shop–which he has at home–and the care of his father." Wender's sister states, "he is both an excellent brother and son. He is the person that helps my father; for years now my father has been on a wheelchair as a result of a traffic accident. My brother bathes him, helps him get up and puts him to bed. My father was found to have a cancer and we have to look after him day and night. … My brother would change the urinary catheters in his stomach" and "my father is totally dependant [sic] on my brother." Wender's father describes him, "As a father, he is a loving, devoted and responsible; as a brother, he is helpful and kind; as a son, he is my source of support and strength, being very loving and responsible; as a grandchild, he is very loving".

In addition, he is a well-respected member of the community and recognized as a good, honest and hardworking man. All accounts of Wender from the letters of support filed on his behalf indicate that he is a "hard working", "humble", "responsible" member of the community. A member of the community describes Wender as, "a hardworking young man, and more importantly he is very good to his father. He is the person that looks after him, bathes him, changes his clothes, changes his bags–his father does keep him really busy. He is a humble young man."

Although, Wender is still a very young man, he has a reputation and history as a decent and contributing member of his community and society who is deserving of a second chance.

## II. GUIDELINE CALCULATIONS

The Guideline Calculations put forward in the PSR are incorrect as stated in the Defendant's objections. The Defense submits that a minor role reduction should be assessed in this case. With these adjustments Wender Cortes Cantillo's Total Offense Level should be 26 and the corresponding imprisonment range should be 63-78 months, before any departures or variances.

### A.  Minor Role

In further support of the minor role reduction, the Defense submits that the amount of drugs transported should not preclude a minor role assessment; and that Wender's role should not be judged against other unindicted, participants in the larger conspiracy. These arguments are supported by the relevant Sentencing Guideline, §3B1.2 and current 11th Circuit Caselaw.

### 1. Amount of Drugs Transported

It is undisputed that Wender was merely a maritime smuggler and he was clearly not an organizer or the owner of the drugs. Therefore, factually the large amount of drugs or the street value of those drugs has no logical relation to Wender's role in offense and should not be used to preclude him from receiving a minor role reduction.

In addition, the 11th Circuit recently addressed similar arguments on appeal in United States v. Cruickshank, 837 F.3d 1182 (11th Cir. 2016) and the denial of the minor role was reversed when it was based solely on the large drug quantity.

There has been no additional fact or evidence the Government has presents to justify denying a minor role in this case.

### 2. Role in Relation to Other Participants in the Criminal Activity

Probation cites DeVaron, a 1999 11th Circuit Case, and argues when failing to recognize and apply the minor role in the Revised PSI, that Wender and his co-defendant were the only known conspirators.  However, the 2015 Amendments to the section 3B1.1 of the Guidelines, made it clear that the defendant's role should be judged against the entire conspiracy. The U.S. Sentencing Commission attempted to clarify this point by adding the phrase "in the criminal activity" to Application Note 3(A),  "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant **in the criminal activity**". This is significant because it makes clear that the role assessment is not simply made in reference to the two Defendants indicted in the instant conspiracy but applies to all participants in the criminal activity - which is much broader than the four defendants indicted in this case based upon the 1999 case of DeVaron.

More recent case law also makes this clear that even if a defendant is only held responsible for the drugs in his possession, this does not preclude the assessment of a minor role. See United States v. Presendieu, 880 F.3d 1228 at 1250 (11th Cir. 2018)(remanding for resentencing when court indicated that the defendant "was not entitled to a minor role reduction solely on the ground that she was being held accountable only for her own actions as opposed to the broader conspiracy," instead of considering other "relevant factors").

### 3.   U.S. Sentencing Commission's Position on the Use of the Mitigating Role Adjustment

The United States Sentencing Commission has made it clear that not only is there great disparity among district courts when assessing the Minor Role, but the Mitigating Role is not being given by district courts enough - especially in drug case, "Overall, the study found that mitigating role is applied inconsistently and *more sparingly* than the Commission

intended."(Emphasis added). United States Sentencing Commission, Amendment to the Sentencing Guidelines, April 30, 2015 at p. 45.[1]

The Defense suggests, Wender Cortes Cantillo is exactly the type of defendant in the type of case that the Sentencing Commission intended the Minor Role be applied to.

## III.  REQUEST FOR SPECIFIC DEPARTURES

### A.   Downward Departure or Variance for Extraordinary Family Circumstances and Detrimentally Harsh Effect on Innocent Family Members

U.S.S.G. § 5H1.6 contemplates a departure based upon loss of caretaking or financial support of a family member. In Wender's case serving a lengthy sentence in prison will cause a substantial, direct, and specific loss of essential caretaking, and essential financial support to his father. As detailed above, Wender's father, suffer from conditions that require his daily caretaking, which does not permit this father to live on his own, perform the basic functions of normal life like, walking, bathing, dressing, eating, etc. without the help of Wender. In addition, as there are no other male relatives there is no comparable alterative to Wender's care in this situation because the father needs to be physically moved from his bed to a wheelchair and around the home. Moreover, there is no other reliable financial support of the father as other family members do not have the financial means to support him. This type of unique family circumstance - where there is a disabled father who is paralyzed; a family in severe poverty in a foreign country; and no other male relatives to assist physically or financially as an alternative to care - substantially exceeds the ordinary harm of incarceration of a similarly situated defendant.

---

[1] This report goes on to state, "In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district). For example, application of mitigating role varies along the southwest border, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of the 2-, 3-, and 4-level adjustments." Id.

A departure may be considered pursuant to 5H1.6, comment. (n.1), based upon loss of caretaking and financial support in light of the circumstances with his dependent and disabled father.

Under both this Guidelines section and § 3553(a), the Court is able to take these circumstances into consideration when fashioning an appropriate sentence and grant a departure and/or variance. See U.S. v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005) (on remand the district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); United States v. Dominguez, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); United States v. Owens, 145 F.3d 923 (7th Cir. 1998) (Court found departure based upon extraordinary family circumstances where defendant cared for his children, a brother with Downs Syndrome and wife may be forced into public-assistance); United States v. Lehmann, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of probation affirmed with a departure / variance based upon care for a nine year-old developmentally-disabled son); United States v. Leon, 341 F.3d 928 (9th Cir. 2003) (departure under 5H1.6 upheld for defendant who was sole care giver of wife with renal cancer and suicidal);  United States v. Boeka, 2006 WL 3780400 (D. Neb. Dec. 20, 2006) (court departed / varied based upon extraordinary family circumstances including caring for a severely disabled son with cerebral palsy). United States v. Colp, 249 F. Supp. 2d 740 (E.D. Va. 2003) (departure granted because defendant was sole caretaker for husband disabled by brain injury).

**B. Downward Departure for Aberrant Behavior Pursuant to U.S.S.G. §5K2.20**

This offense is clearly outside any normal, typical behavior that Wender has demonstrated in his history and personal life. He has lived a law-abiding life and has been a

good and productive member of society as detailed in the PSI and in letters submitted on his behalf.

U.S.S.G. §5K2.20(b) states,

> The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.

Wender meets all these elements. This was a single crime that was committed without any planning, on his part which, occurred over a span of a few days. Lastly, apart from this case, Wender has lived nothing but a law-abiding life.

Application note 3 states that the Court should consider the following circumstances: "the defendant's (A) mental and emotional conditions (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."

First, Wender has lived a life in poverty and it was only to earn money to help his family did he agree to participate in this crime. Second, Wender has a good and long employment record since he was a child of working and a demonstrated career as a mechanic. Lastly, he has made efforts to mitigate the offense by timely accepting responsibility for his participation, proving assistance and a full safety valve statement. This guideline departure should therefore be applied to result in a Downward Departure in this case.

**C.    Downward Departure Because Wender is Not a US Citizen and Eligible for Programs or Early Release**

As explained above, Wender Cortes Cantillo was brought to this Country by the United States Government for prosecution, however Wender will not be treated the same as other federal prisoners who are US citizens or residents and therefore, will receive a much more severe

sentence because of this. For example, the Bureau of Prisons will not release Wender early

because as a Colombian citizen he is not eligible for a half-way-house or any other early release

program. Accordingly, he may serve up to 18 months more than prisoners who are not

deportable aliens.

18 U.S.C. § 3624 (c) provides that the Bureau of Prisons assures that a prisoner serving a

term of imprisonment spend a reasonable part, not to exceed six months of the last ten percent of

his sentence, to be served in home confinement or half-way house. This provision does not apply

to deportable aliens. Larty v. Department of Justice, 790 F.Supp 130 (W.D.La. 1992) and United

States v. Smith, 27 F.3d 649 (US DC Cir. 1994) and United States v. Soto, 976 F. Supp. 1367

(D.Or. 1997). The sentence the Court imposes should include a reduction by the Court of at least

these six months after determining the initial guideline sentence, especially in this case as

Wender did not voluntarily come to this country.

> ### D.   Downward Departure for Contracting COVID-19 while in Custody and for Loss of Privileges and Restrictions at BOP during COVID-19

As shown in the Presentence Investigation Report at page 10, contracted COVID-19 in

August while he has been incarcerated in the Federal Detention Center in Miami. He suffered a

number of weeks with physical symptoms such as fever, weakness, flu-like symptoms and it is

unknown what, if any future consequences having contracted COVID-19 will have on Wender.

In addition, the conditions of incarceration at the Bureau of Prisons has changed due to

COVID-19 making the conditions of incarceration more restrictive and harsher than usual. For

example, recreation, movement and socialization is restricted requiring the prisoners to spend

more solitary time in their cell which is mentally and physically more challenging and difficult.

Also, voluntary and beneficial programming has been limited as outside volunteers and

contractors have been preventing from entering the facility.  Therefore, the conditions of

incarceration since Wender's admission into FDC and during the foreseeable future while COVID-19 continues, will be more difficult and onerous. The Court should recognize this remarkable difference during the Pandemic and grant a downward departure and/or variance for COVID-19.

## IV.  REQUESTS FOR DOWNWARD VARIANCE

The 18 U.S.C. § 3553(a) factors should also be considered when determining the appropriate sentence for Wender Cortes Cantillo. In <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the Supreme Court excised that part of the Sentencing Reform Act that made the guidelines mandatory and modified it to make the Guidelines effectively advisory. It requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well. 18 U.S.C. § 3553(a) now governs federal sentencing. It requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

### A. Nature and Circumstances of the Offense

Although this case involves is a serious drug offense, Wender's participation was limited to a very minor role in this offense as discussed in the Objections to the PSR. Wender was not any type of leader or organizer, but a lowly crewmember on a vessel that was transporting cocaine. He knew nothing about the operation or the voyage and merely showed up at the boat when he was told to and awaited and followed instructions from the organizers of the conspiracy.

### B. History and Characteristics of the Defendant

The Court should consider Wender's long, history of work and good characteristics including being a well-respected man in his family and the community where he resides. As discussed in more detail above in section I and in the letters submitted on his behalf,

"hardworking" probably understates Wender's character and fully paint a true picture of his family values, morals and character.  The Court should recognize his entire life history and understand he has not lived the life of privilege and had to struggle to support his family. Therefore, the Court should consider his personal history and characteristics as a basis to vary downward.

### C. The Need for the Sentence Imposed

A lengthy sentence is not needed to accomplish the factors set out in 3553(a)(2).

The seriousness of this offense, the promotion for respect for the law, and deterrence is accomplished in with a significantly shorter prison sentence.  This first-time offender who has never been to jail will lose his freedom for years and be away from his disabled father, children, partner, family and home. This conviction and sentence will be with him forever and certainly conveys that message. An 8 or 9 year sentence is not needed to not make the message to the community any clearer or stronger.

In addition, as Wender will be returned to Costa Rica after his sentence to rebuild his life as a mechanic with his family, he will most likely never been involved in criminal activity and therefore, the public is not in danger of further crimes of this Defendant.

### D. Unwarranted Sentencing Disparities

18 U.S.C. § 3553, also requires the Court to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  The Defense submits in light of the policy considerations discussed above related to the Minor Role and the application of the Safety Valve to Title 46 cases now after the passage of the First Step Act, that the sentences for crew members in Title 46 cases have been decreasing and the current

trend is moving toward sentences lower sentences for defendants similarly situated as Wender

Cortes Cantillo.

The Defense submits that all the facts and circumstances cited above for various

Departures are similarly applicable to warrant a Downward Variance.

WHEREFORE, the Defendant, Wender Cortes Cantillo, requests this Court take into

consideration the foregoing circumstances and legal authorities in determining an appropriate

and just sentence for him.

Respectfully submitted,

Counsel for Wender Cortes Cantillo
SHERRI A. ROMANO, P.A
2103 Coral Way Suite 304
Miami, FL 33245
Tel: 305-441-9858
Fax: 866-624-1721
E-mail: sromano@sarpalaw.com
BY:  /s/ Sherri A. Romano
Florida Bar No.: 317380

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this __9__ day of __November _____, 2020, I
electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which
will send a notice of electronic filing to all counsel of record.

BY:  /s/ Sherri A Romano